First case on calendar, Serra v. Giddens. Good morning. Morning, your honors. Andrew Goldenberg for the appellants. May it please the court. This appeal addresses one issue, and that's whether cash from earned commissions for which no RSUs were granted and for which no right to equity was issued should be subordinated under 510B. We submit they should not be. The rule in this circuit is, and I'm taking the quote from Market XT case. It is black letter law that claims are analyzed as of the date of the filing of the petition. And now this so-called snapshot view where you look to the status of the claimant as of the petition date controls the subordination question. And as of that date, your clients had no RSUs. That's correct, your honor. As of that date, our clients had no RSUs and had no enforceable right to equity. So this snapshot approach requires that the claimant have the rights and privileges of equity ownership. Now these appellants are former production based employees with earned commissions that were withheld by Lehman as part of their total sales compensation. No RSUs were granted connected to these earned commissions. This is- The bankruptcy judge, A62, said that the claimants admit they could not elect to receive cash instead of the awards. And that was by way of a stipulation. Is that an accurate statement by the bankruptcy court? That they, I'm sorry, your honor. Claimants admit they, quote, could not elect to receive cash instead of the awards. End quote, stipulation paragraph ten. Once RSUs were granted, they were, and this court held in the LBHI decision, they were entitled only to receive stock, but the issue here is, what were they entitled to as of the petition date? They didn't hold securities as of the petition date. Were they entitled to cash? Well, they were entitled to be treated as any other general creditor. As of the petition date, there was money sitting in a Lehman bank account. These earned commissions that were part of the employee's total sales compensation. This was money that was withheld on a monthly basis. And if you take a look at their compensation statements, it's in cash. And so as of the petition date, they had a right to receive those withheld commissions, just like any other creditor. It was a, you can view this as sort of like a breach of contract claim, where an employer- I'm with that for the seven employees here that were on a monthly accrual basis, right? That's what we're talking about right now. That's correct, your honor. The other appellants are not at issue here. I have a compensation statement. This is at 240 for one of them. And I'm trying to figure it out, how it works, whether at any time did they have a right to cash rather than just accruing for the units, the RSUs? Well, if you look at that compensation statement, you see a few lines, I guess, seven lines. Monthly, right? That's why we have- Yes, this is a monthly statement where it states the total sales compensation. And it has in dollars what Lehman described as the equity accrual calculated. But if you look at this compensation statement, there are no RSUs attached to it, nor could there be. But that's what the equity accrual calculated is, isn't it? Well, for prior years, the equity accrual calculated was essentially earned commissions that were withheld. And at year end, RSUs were granted. But here- Why would it be broken up by monthly if the accrual's not starting then? Each month, these employees produced a certain amount in sales. And they got compensated through commissions on those sales. But part of the commission was set aside for year end. And so these compensation statements were issued on a monthly basis to the- To set aside in a cash account? Correct, Your Honor. To set aside in a cash account. But for 2008, unlike prior years, on the petition date, there were no RSUs that were granted for these earned commissions. It was just sitting there in a bank account. And that's what the employees here are seeking. We're seeking to recoup the cash that was withheld by Lehman for which no RSUs are attached. Are you saying that equity accrual calculated number, say for example, 8-2008, the 3,000 number, that's actually cash sitting in an account somewhere, or is that just a notation? My understanding is that's cash sitting in an account somewhere. That's commissions already earned by the employee. So is that related to the RSUs? It is not related to the RSUs. It couldn't be until year end. Lehman issued- So at year end, was it related to the RSUs? At year end, it would be related. But here, we didn't get to year end. And that's the point, is that in this circuit, the rule is, what are you on the petition date? Are you a creditor or are you something else? Here, you're a creditor because the employees here had no right to receive RSUs. That was a right that was within the discretion of Lehman to say, okay, at year end, we're going to treat these commissions as we're going to convert them to RSUs, or we may pay you in cash. But it wasn't a right that the employees had. The employees had the right to be compensated. And on the petition date, they had a right to the cash that was withheld from their total sales compensation, as described in this compensation statement. So all they had was an expectation that they would receive RSUs? Your Honor, that's not really the issue, whether they had an expectation. Unlike in the LBHI decision, where the court said, RSU holders had an expectation like that of a shareholder because they had voting rights. They had a right to dividend. But most importantly, the RSUs were tied to the value of Lehman stock. Here, we don't have that. We don't have any of that. So there were no expectations. There was an expectation that they were going to be compensated. And on the petition date, if you take the snapshot approach, which was applied in Market XT, which was also cited with approval by Judge Shindlin in a Lehman bankruptcy case where she said, on the date of petition, these claimants held Lehman bonds, and she cites Market XT. And this court affirmed that decision. So the rule in this court- If they had left during the course of the year, resigned from the company, would they have gotten anything? Would they have gotten any cash? Well, if Lehman did not declare bankruptcy, maybe they would have been entitled to cash, but that's not what happened here. What do you mean maybe? Would they? Well- For the accrued RSUs during the course of the year, for the month of August, would they have gotten cash for that number? I believe they would have been entitled to cash. Because if you're leaving and your employer owes you those commissions, and they haven't converted to RSUs yet, I believe that they would be entitled to cash. But that's not what we have here. We have- Why isn't it a way of looking at it, though? I'm sorry, Your Honor? Why isn't it a way of examining, answering Judge Droney's question, why isn't it a way of examining the issue here? Well, because here, the employees didn't leave. They stayed, and Lehman declared bankruptcy, right? So we have cash sitting in an account, which is demonstrated by the compensation statements, and we don't have any securities. We don't have security holders. Am I right that even if you got the RSUs, if you left before the five-year vesting period, you would get nothing? I believe that's correct. But we're not talking about employees that got RSUs. We're not talking about security holders here. This is not like the Lehman, the LBHI decision decided by this court last year. All the claimants there were RSU holders. Here, we don't have equity holders. And this court in MedDiversified said, yes, we have to interpret 510B broadly, but the court also noted that there are limits to this, and it looked at the factors. Well, how do you- MedDiversified was focusing on people's expectations, and looking at it from the way least favorable to your position, your clients agreed to perform services in exchange for compensation that would, at the election of Lehman, be paid in RSUs. That's right, Your Honor, at the election of Lehman. But on the petition date, it was- In MedDiversified, the claimant had an enforceable right to receive stock in the debtor. And here, we don't- Mr. Presley says there is no enforceable right to get cash. I'm sorry? This agreement says that there is no enforceable right. It says there is- Anything other than RSUs, if that's what Lehman wants to give you. Right. There is no enforceable right to cash after RSUs are granted. And this court, in the LBHI decision, where an argument was- an alternative performance argument was made, where they said, well, the RSUs have invested, so we're entitled to cash. The court cited to Lehman's program documents and made a note to say, you're not because you've already been granted RSUs. Here, that's not the case. Once you're granted RSUs, you're entitled to stock if you stick around for five years. But here, you're not even- we're not even there yet. We're not holding a security. Is that an issue still to be decided? I mean, is that an issue in play? Whether you're a security holder or not? No, it's- well, I submit that it's not- But you're entitled to cash. I- you- well, we're seeking- The linchpin of your argument is they're entitled to cash, therefore, they've got a claim and the court got it wrong. That's right, because the- Judge Torres and Judge Chapman did not cite to the rule in this circuit, which is you look to the status of the claimant as of the petition date. Do you have an enforceable right to equity? Do you hold a security? And we don't have that here. Thank you. Good morning, may it please the court. Karen Chow for the Lehman Brothers trustee. I am slightly surprised to hear appellant's arguments here, where I don't think that they had previously argued that Lehman had not, that the amounts withheld were not intended to be paid in RSUs. Intended by whom? By Lehman Brothers, who was, as your honor pointed out, is the sole party here that had the ability to make that decision. But the decision was not made. I mean, Lehman could have decided that their stock is sufficiently, excessively diluted, and they'd rather pay people in cash. Couldn't Lehman have done that? Respectfully, I would have to disagree, your honor, and I'm going to point the court to what is appendix page 712. This is the document that each of the appellants received, laying out the 2008 equity accrual schedule, which says, for these claimants, the portion of the 2008 total compensation delivered in the form of an equity award for the full year will be calculated according to the schedule below. Any year-end award will be determined by subtracting your July RSUs, which were, when it became apparent that Lehman had some trouble, they kind of prepaid parts of people's bonuses and commissions. So any year-end award will be determined by subtracting your July RSUs from your full year award, but in no event will your full year award be less than your July RSUs. So- Any year-end award. It doesn't say the year-end award, it says any. Doesn't that reserve to Lehman the right to decide that they're not going to award RSUs and that they're better off as paying cash? Well, I think that if you look at the schedule, it's not that they would be determining that they would be paying cash instead of RSUs. It would be that the claimant's performance had gone down to the point where- They wouldn't get anything. They wouldn't get anything, exactly. If they were going to get anything at the end of the year, as this schedule lays out, this is the amount that would be paid in RSUs. What do you make of the extensive passage in the prior case, in the prior appeal, that emphasizes that the holders of RSUs had indirect but some voting rights and benefited from dividends. These plaintiffs don't have anything. All they, their sum total is that they weren't paid RSUs and they weren't paid cash and they didn't have any of the benefits of stockholders. Yes, your honor, and the trustee is not contending that at the time of the filing date, they actually held RSUs. But they didn't, absolutely. No, they absolutely did not. That is true, or at least they didn't hold RSUs for the amounts at work. And they had no enforceable right to get the RSUs. I would have to disagree. I am not aware where they're pointing to anything that says that they did not have an enforceable right to receive RSUs. And in the past, in their briefing, they have said that Lehman was the one who had the discretion. I recall from the last case that Lehman decided, I think at the end of the year, whether and to what extent to pay the withheld monies in RSUs or in cash. Your honor, in the previous case that was dealing with bonus amounts. So then the claimants had no right to a bonus because they were discretionary bonuses. So it is true that for the bonus claimants and the part of the appendix that I pointed your honor to. The bonus was frequently 100% of their cash, of their contractual compensation. Absolutely, your honor, but for the bonus claimants, Lehman Brothers did have the discretion to not pay them any amount of bonus whatsoever. In contrast with the claimants here, who each month accrued the right to receive RSUs. They didn't get a bonus. Instead, they accrued this over the course of the year. Is that the reason for the monthly accrual for the production based employees? Yes. It was a mathematically driven formula while there was more discretion for everybody else? Exactly, your honor. And I think that this is borne out by the documents and is also borne out by the statements that the appellants have previously made in their briefing. Why was it done on a monthly basis? Why not just an annual basis? Do you know? I honestly do not know. I think to some extent this is because unlike the discretionary bonus employees, the accrued equity, the performance based employees, such as the ones in question here, could have left. They could have resigned partially through the year and have received amounts that had been accrued in the past. So if they left in August, they would have gotten the first seven months of the RSUs? In December, when Lehman Brothers granted the RSUs, they would have received the RSUs that they had accrued over the course of the year, yes, your honor. Were these plaintiffs paid anything other than commissions? I mean, was there a base salary? I think in some cases, and I'm not aware that any of the seven appellants here- If they weren't paid a base salary and they have to keep body and soul together through the year, then it would make sense for them to accrue monthly. Yes, exactly, your honor. And of course, part of their compensation was also paid in cash on a monthly basis. As of the filing date, what did these plaintiffs have? These plaintiffs had an agreement that says that the only things that they were entitled to was RSUs, unless Lehman Brothers had somehow changed its mind. And these people had the- Has Lehman Brothers changed its mind, in which case they would have what? Again, I don't think it's totally clear, and I- Cash, right? I'm sorry? Cash. On the filing date, Lehman Brothers had told these people that they were to receive RSUs. And- On the filing date. As of the filing date, your honor. And I would point- Has Lehman Brothers actually said that to them at that point in time, or Lehman Brothers was bound, if you will, by the compensation agreement that they would get RSUs at the end of the year? Yes, the latter, your honor. And what they had is an expectation that they would receive the risks and returns of a shareholder. They didn't have a right to demand cash. In the future? In the future, yes, your honor. And where do we look to find out whether somebody's expectation of taking on the risk of return in the future constitutes a security in the present? Well, your honor, I think that you could look to these either being securities, as I think the court gave a nod to during the LBHI decision, or you could look in the language of section 510B, which says that they have to arise from the rescission or damages relating to the purchase or sale of a security. So there is no debate here that RSUs are securities. And here, the only thing they had entitlement to, the only thing they had a right to receive, was RSUs. They had no right to receive cash, and therefore, their purchases arise from. In Ray Med Diversified, your honor, this court looked at- That it arises from securities if they have a right to get securities, but you said a few minutes ago that they had the expectation of getting securities subject to the decision by Lehman Brothers to give them. I believe that Lehman Brothers had already made that decision, and that's what I was- On the day they declared bankruptcy? No, your honor. In giving out the monthly statements, in the program documents that I cited to, and in the other underlying agreements, that this was already a decision that Lehman Brothers had made. And it was clear to the appellants that this was a decision that Lehman Brothers had made, as they have previously conceded in their briefs. Can you explain that compensation statement that I was asking about earlier? I think it's 240 of the appendix. It looks like the compensation is on a monthly basis calculated by cash commissions and then added to that is the equity accrual calculated. That seems to be the sum of the two figures at the total sales compensation. Sorry, your honor, I'm trying to find which page you're on. 40 of the appendix? Yes, 240. Yes, your honor, so these on a monthly basis are showing kind of the breakout of how this person did. So then, for example, for August, it says cash commissions 23,492, see that? Yes, your honor. And then underneath it is equity accrual calculated. Yes, your honor. Is the equity accrual calculated, is that the RSU, about the potential RSU? Yes, your honor, and there's no dispute that they received that cash. So in this case, he would have received the $23,000, and the amount withheld was 3,000. Just to clarify one further issue, there is no evidence before the court that there was some sort of bank account where cash was stored. You just said the amount withheld. It was withheld in the sense that it was not paid, but there was no bank account or there is no evidence that there was a bank account sitting somewhere with cash. What difference does that make? I mean, Lehman didn't keep his money in a mattress. It was somewhere and it was cash. In terms of the- Even if it wasn't a mattress, it would be cash. So why does it matter if it was segregated or in a separate account? Well, it does matter in terms of the second part of the MedDiversified test, which is whether or not equity holders had a right to rely on that cash. It was not sitting segregated somewhere where they could have a right to demand it. Instead, this was something that was used as the capital of Lehman Brothers Inc. And shareholders had a right to think that this was part of the capital of Lehman Brothers Inc. because these people were to be paid in RSUs, not in cash. Just to quickly summarize, Your Honor, as this court held in Lehman Brothers Holdings, RSUs are undisputably securities. The failure to deliver securities, including the failure to deliver securities owed as compensation to an employee under MedDiversified is covered under section 510B. And there is no dispute here that the only thing the claimants had a right to or were entitled to as of the filing date was RSUs. They had no right to demand cash in place of those RSUs. Therefore, as the claims arise from the failure to deliver securities owed to the appellants, they are subject to section 510B. Thank you. Thank you, Your Honor. I just want to address the question that you had on compensation statements and what this equity accrual means. You couldn't determine the number of RSUs that were going to be granted for these withheld commissions until the compensation committee set a grant price. So for example, let's say at the end of the year you had $10,000 in withheld earned commissions and the grant price was $10. Then you knew at that point you're going to get 1,000 RSUs. The grant price was the value of the RSU, right? That's correct, Your Honor. It was a price that was set by the compensation committee, but that couldn't be determined until year end. So what you're looking at in the compensation statement, it has no connection whatsoever to RSUs. Until year end grant date- Why isn't that really cut against you? Because what it means is that they're going to get RSUs. And whatever the value is of Lehman stock at that time is going to determine into how many RSUs the accrued and unpaid earnings would be translated. And that means they were taking the risk of the upside and the downside. I disagree with that. What it means is that there's cash that's being withheld from your commissions. And at the end of the year, as Your Honor noted, Lehman decided, are we going to use these commissions and convert them into RSUs? Are we going to pay them in cash? And this goes to the- Your adversary says it was already settled that it was going to be converted into RSUs. Well, maybe Lehman thought that it was, but that wasn't a right that the employees had. They had no legal right to RSUs. The guide to working at Lehman Brothers, the program document for 2008, quote, and this is on A103, at the firm's option, a portion of an employee's total compensation, combined base salary, bonus, and other compensation, may be payable in the form of conditional equity securities, restricted stock units, stock options, or other equity awards. It was Lehman's discretion how it was going to pay its employees. And that's important here because- Even that being the case, why, perhaps all you're saying, though, is that what your clients had was just an expectation of getting RSUs or an expectation of getting securities. After all, we don't always get what we expect, but it's still an expectation. Well, that they had an expectation is not how you look at the rule in this court. It's not for this court to guess what Lehman would have done in the future. That's why we have this so-called snapshot approach where we say, did you have a right to equity on the petition date? Did you have ownership of a security on the petition date? What did they have on the petition date? I asked your adversary. What they had was cash, cash withheld from them. That was owed to them. Part of their- They had cash withheld and they didn't have it. Well, it was withheld, right. It was, they had a right to receive compensation in the form of cash. That's what the employees are seeking today, to recoup the cash that was withheld from them. How could they have had a right to get compensation in the form of cash if, as you just said, Lehman had a right to decide that they would get RSUs anyway? Well, they, Lehman did have a, they had a right to either say, you're going to get RSUs, you're going to get cash. But on the petition date, these employees were general creditors just like everyone else entitled- That's a deduction. I mean, that's an inference drawn from fact. What did they have as a, in financial terms? Withheld earned commissions. Okay. Thank you. Thank you both. Thank you. This is expertly argued. We'll reserve decision.